**IN THE UNTIED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ATLEISURE, LLC | ) | |
| | ) | **NO. 1:12-cv-01260-CAP** |
| *Plaintiff*, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| vs. | ) | |
| | ) | |
| ACE EVERT, INC. | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## DEFENDANT ACE EVERT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ATLEISURE'S MOTION TO COMPEL DISCOVERY

Defendant Ace Evert, Inc. ("Ace Evert") respectfully submits this Memorandum of Law in opposition to Plaintiff's Motion to Compel Full and Properly Verified Discovery Responses, Privilege Log, and 30(b)(6) Deposition Testimony.

## I.     INTRODUCTION

Conspicuously absent from Plaintiff's motion to compel discovery is any mention of Ace Evert's motion for a protective order and to extend fact discovery filed on February 4, 2013 (Doc. 62), and as to which Plaintiff has neither filed formal opposition nor cross-moved.[1]  Instead, Plaintiff filed a

---

[1] Plaintiff rejected Ace Evert's request for consent to seek an extension of fact discovery.  By Order dated February 21, 2013, the Court granted Ace

duplicative motion to compel some of the very same discovery that was the subject of the motion for protective order.

Moreover, Plaintiff overlooks the fact that it has named but one defendant in this case, Ace Evert -- even though the accused product was manufactured and designed by non-party Ningbo Everluck Outdoor Products Manufacturing Co., Ltd.  And despite this knowledge, Plaintiff's discovery demands, and particularly its Rule 30(b)(6) deposition notice, specifically defined the information sought in terms of the named defendant Ace Evert only.[2]

Thus, Ace Evert respectfully submits that the adequacy of its discovery responses must be measured in reference to the demands that Plaintiff had actually served, and not what the Plaintiff may have wished that it had asked under Rule 45 Fed R. Civ. P. of a non-party.

---

Evert's motion to extend discovery, and denied Ace Evert's motion for a protective order for lack of sufficient detail.  To the extent applicable, those details are set forth herein.

[2] For example, in its initial disclosures dated June 15, 2012, Ace Evert identified Cheng Zhang, Chief Engineer of Ningbo Everluck Outdoor Products Manufacturing Co., as the individual with knowledge concerning the design and operation of the accused products and, indeed, was the only individual Ace Evert had identified as having specific knowledge with respect to the design and operation of the accused products.  Therefore, Plaintiff has known since the earliest stages of this case that it was Ningbo Everluck that had designed and manufactured the accused product.

## II.   PLAINTIFF'S DEMANDS FOR DISCOVERY WITH RESPECT TO PRODUCTS IT HAS NOT ACCUSED ARE IMPROPER.

Many of Plaintiff's discovery demands as to which Plaintiff seeks to compel responses are improper because, in contravention of the Local Patent Rules, they seek proprietary information with respect to products other than the accused product.  Plaintiff's improper demands as to which it seeks to compel a response include:   Interrogatory No. 1, Interrogatory No. 2, Interrogatory No. 3, Request for Production No. 43, Request for Production No. 45, and request(s) to compel deposition testimony with respect to products other than the Accused Product.

Local Patent Rule 4.1 requires that the Plaintiff be as specific as possible in making an infringement claim by identifying, if known, the name and model number of the accused apparatus.  Local Patent Rule 4.4 requires that Plaintiff make these disclosures within thirty days after filing the Joint Preliminary Report and Discovery Plan.  The obvious purpose of these rules is to require a plaintiff to indentify the accused product(s) with as much particularity as is possible **before** the commencement of discovery.  That is, the purpose of the LPR is to provide for the orderly resolution of known or suspected patent infringements and to preclude plaintiffs from issuing broad discovery demands in the hope of stumbling across possible infringements.

Such rules protect confidential commercial information from probing by competitors and discourage strike suits and "fishing expeditions."

As observed by the Federal Circuit: "The [patent local] rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed…". *O2 Micro Int'l. Ltd. v. Monolithic Power Systems, Inc*., 467 F.3d 1355, 1366 n. 12(Fed. Cir. 2006), quoting, *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.,* 417 F.Supp.2d 1121, 1123 (N.D. Cal. 2006).

Similarly, "[t]he level of detail that a plaintiff must provide in its infringement contentions is not conditioned upon discovery from the accused infringer; plaintiffs are required to undertake a rigorous pre-suit investigation. . . ." *Parkervision, Inc. v. Qualcomm Inc.,* 2012 WL 5458368 (M.D.Fla., August 27, 2012).  Local Patent Rules, such as LRP 4.1, require "plaintiffs to set forth specific theories of infringement early in the case . . . creat[ing] a 'specific trajectory for the case,' leading to more focused discovery and 'narrowing issues for Markman, summary judgment, trial and beyond.'" *Id.,* quoting, *Connec Tel, LLC v. Cisco Sys., Inc.,* 391 F. Supp.2d 526, 527 (E.D. Tex. 2005).

Here, Plaintiff had identified the following as the **sole** accused product: "UMB  13  OFFSET  LINEN  SOLAR  LIGHTED  RECTANGULAR

CANTILEVER UMBRELLA WITH UMBRELLA BASE AND COVER."

Thus, Plaintiff is entitled to discovery related to this product. Plaintiff is not entitled to discovery with respect to all of Ace Evert's offset and/or LED lighted umbrellas, and without regard to whether Plaintiff accused the product as infringing. Accordingly, Plaintiff's motion to compel discovery should be denied with respect to the following overly-broad requests that violate the Local Rule:

**INTERROGATORY NO. 1**

Identify each and every Ace Evert umbrella, by product name and model, that is either offset or includes lights or other illumination for each of the last five years.

**INTERROGATORY NO. 2**

For each umbrella identified in response to Interrogatory 1, identify the units of umbrellas sold for each of the last five years by customer.

**INTERROGATORY NO. 3**

For each umbrella identified in response to Interrogatory 1, state the gross revenues received by Ace Evert for each of the last five years by customer.

**REQUEST FOR PRODUCTION NO. 43:**

Please produce documents and things that refer or relate to Defendant's market share as a percentage of total sales in the business of umbrellas, expressed both in units and dollars.

**REQUEST FOR PRODUCTION NO. 44:**

Please produce documents and things referring or relating to the unit and dollar volume of Defendant's sales of umbrellas in general and the unit and dollar volume of Defendant's sales of the Accused Products.

**REQUEST FOR PRODUCTION NO. 45:**

Please provide financial statements (audited and unedited) financial projections or forecasts, and mid-year and end-of-the-year profit and loss statements prepared by or for Defendant for each of the last ten years.

Each of these written discovery demands is not proper because they seek discovery of propriety and confidential information relating to products other than the accused product.  As such, they contravene the purpose of Local Patent Rule 4.1, which requires that patent infringement plaintiff

crystallize its infringement contentions at the outset of the case so as to give the defendant proper notice of its contentions and to narrow discovery.

In addition, request for production No. 45 is likewise exceeding broad, demanding defendant Ace Evert's year-end and mid-year financial statements for a ten year period.  Moreover, as Plaintiff knows from defendant Ace Evert's (i) document production, (ii) interrogatory responses and (iii) deposition of Ace Evert's 30(b)(6) designee, the non-party Ningbo Everluck had designed, manufactured and sold the accused product (sold FOB China exclusively and directly to Bed, Bath and Beyond).   Defendant Ace Evert's involvement with the accused product was essentially limited to providing post-sale customer service[3].  Therefore, not only is request for production No. 45 exceedingly broad, but the requested information is likely of limited probative value.

Similarly, questions asked during the deposition of Ace Evert's 30(b)(6) designee seeking disclosure with respect to products other than the accused product were improper, *inter alia,* because Plaintiff sought discovery with respect to products and matters that were beyond the scope of

---

[3] 35 U.S.C. 271 speaks to making, using, selling, offering for sale and importing, as constituting the acts that may constitute patent infringement. Post-sale service is not such an act.

its infringement contentions.[4]   Therefore, Ace Evert's objections during the deposition were proper, and Plaintiff's motion to compel should be denied.

With respect to the accused products, in its response to Interrogatory No. 14 Ace Evert disclosed that the accused product had been made exclusively for Bed, Bath and Beyond, disclosed the number of units sold and the sales price of the units sold.

In response to Plaintiff's document demands, Ace Evert provided Plaintiff with the commercial invoices, shipping documents and purchase orders associated with those accused sales.   Therefore, to the extent that the above-listed discovery demands could be construed as to being limited to the accused product, Ace Evert has substantially and properly responded.

## III.   MANY OF THE DEMANDS IN PLAINTIFF'S SECOND NOTICE TO PRODUCE ARE DUPLICATIVE OF DEMANDS IN ITS FIRST NOTICE TO PRODUCE AND INTERROGATORIES.

Plaintiff propounded 94 document demands.   Of these, items 46-94 were contained in Plaintiff's Second Set of Requests for Production of Documents and Things.   As reflected in the chart annexed hereto as Exhibit A, twenty-nine of these demands (46, 48, 49, 50, 51, 52, 53, 54, 55, 56, 58, 59, 60, 61, 62, 63, 65, 69, 75, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, and 93)

---

[4] On January 24, 2013, Ace Evert served general and specific objections to the categories listed in Plaintiff's amended Rule 30(b)(6) notice.   See, Hayes Decl. B.

seek the very same documents and information as prior demands and interrogatories. Indeed not less than twenty items contained in Plaintiff's second notice to produce (Nos. 49, 50, 51, 52, 53, 54, 55, 56, 60, 65, 80, 81, 82, 83, 84, 85, 86, 87, 88, and 89) are **<u>verbatim</u>** (or nearly so) identical to Plaintiff's prior demands.

In response to these items, Ace Evert respectfully submits that it has properly objected to these requests as duplicative, and has thus properly referred Plaintiff to previously provided responses.  Indeed, it is hard to imagine how twenty verbatim identical discovery demands could serve any purpose other than to harass, annoy and oppress defendant Ace Evert and delay its responses to other demands.

## IV.   SEVERAL OF THE CATEGORIES LISTED IN PLAINTIFF'S RULE 30(b)(6) NOTICES CONTRAVENE THE LOCAL PATENT RULES.

For the reasons explained in Point II above, LPR 4.1 and 4.4 limit the scope of discovery to the products and issues identified in the Plaintiff's infringement contentions.  Accordingly, deposition questions regarding Ace Evert products other than the accused product were improper.

Local Patent Rule 3.1 further restricts the scope of discovery in a patent case by barring discovery with respect to:

(1) Requests seeking to elicit a party's claim construction position;

9

(2) Requests seeking to elicit from the patent claimant a comparison of the asserted claims and the accused technology;
(3) Requests seeking to elicit from an accused infringer a comparison of the asserted claims and the prior art; and
(4) Requests seeking to elicit from an accused infringer the identification of any opinions of counsel, and related documents, that it intends to rely upon as a defense to an allegation of willful infringement.

LPR 3.1.

In its written objections served on January 24, 2013, Ace Evert identified Categories 8, 9, and 10 as being precluded by LPR 3.1. Specifically, Ace Evert objected to the following categories on the basis that they are precluded by LPR 3.1:

**8.** The factual basis for Defendant's assertion that the patents are not valid and the Accused Products do not infringe Plaintiff's patents, attached to the Complaint.

**9.** The general state of the art of offset patio umbrellas currently and August of 1999.

**10.** The general state of the art of patio umbrellas with rib lighting currently and May of 2009.

Ace Evert respectfully submits that each of these categories run afoul of the Local Patent Rules. In particular, responding to the above categories necessarily would have required (a) comparing the asserted claims to the accused product, as specifically barred by LRP 3.1(2); (b) comparing the accused product to prior art, as barred by LPR 3.1(3); and (c) the disclosure of counsel opinions, as barred by LRP 3.1(4).

## V. THE RESPONSES OF ACE EVERT'S RULE 30(b)(6) DESIGNEE WITH RESPECT TO ITS AFFIRMATIVE DEFENSES AND COUNTERCLAIMS WERE PROPER.

Plaintiff filed its Rule 30(b)(6) deposition notice on December 27, 2012 (eighteen topics designated for testimony), an amended Rule 30(b)(6) deposition notice on January 24, 2013 (twenty-two topics) and a second amended Rule 30(b)(6) deposition notice on January 28, 2013 (twenty-seven topics).[5]  Only the second amended notice requested testimony with respect to Ace Evert's affirmative defenses and counterclaims.  The deposition was scheduled for February 8, 2013 at Ace Evert's headquarters in Ontario, California, while the depositions of Plaintiff representatives were scheduled for February 4 and 5 in Atlanta.

Ace Evert designated its vice-president, Hang Zhao, to testify.  As reflected in the transcript, the questions posed by Plaintiff's counsel with respect to Ace Evert's affirmative defenses and counterclaims in large part were related to:  (i) sales prior to effective filing date; and (ii) the claimed inventors not being the real inventors.  See, Hayes Decl., Exh. C.  As reflected in the patent documents, the purported inventors had purportedly

---

[5] Plaintiff's Rule 30(b)(6) deposition notices were not served on counsel but, rather, were filed with the court via ECF with notice being sent to counsel electronically.  A copy of the second amended Rule 30(b)(6) notice is annexed as Exhibit A to the Hayes Declaration.  A copy of Ace Evert's objections to Plaintiff's Rule 30(b)(6) notice are annexed as Exhibit B to the Hayes Declaration.

assigned the patents to Southern Sales Marketing Group ("SSMG"). Plaintiff did not acquire the patents until 2012. Accordingly, SSMG and the purported inventors are the only entities possessing knowledge with respect to making the alleged invention(s) and the patent procurement processes.[6]

Obviously, Mr. Zhao's limited knowledge with respect to these matters reflects the on-going nature of the investigation into the invention and patent procurement processes. Indeed, items 64 and 67 on the Court's docket sheet reflect that SSMG had moved to quash the subpoena Ace Evert issued to it regarding these topics, and Plaintiff had also moved to quash subpoenas issued to SSMG and the putative inventor Robert Frazer.[7]

Plaintiff, of course, will be provided with a copy of all materials obtained via the subpoenas, and Plaintiff will be invited to participate in depositions of non-party witnesses. Moreover, had Plaintiff consented to Ace Evert's request to extend fact discovery, it is likely that the request would have been granted, and thus Plaintiff could have conducted its Rule

---

[6] Indeed, during their depositions Plaintiff's officers denied any having any knowledge with respect to the inventions and patent procurement process.

[7] Attempts to serve a subpoena on putative inventor Kevin Harbaugh thus far have not been successful.

30(b) after the return of the subpoenas that had been issued to the SSMG and

purported inventor Frazer.[8]

### VI.  DEFENDANT PROPERLY RESPONDED TO INTERROGATORY 15, AS IT WAS DUPLICATIVE OF THE RESPONSE TO INTERROGATORY 14, WHICH INCLUDED SALES INFORMATION AND DULY REFERRED PLAINTIFF TO SALES DOCUMENTS.

**INTERROGATORY 15**:  Identify all company representatives

who have made sales of the Accused Products and provide the

customers to whom they have made sales and the date of the

sales.

**RESPONSE:**  The Defendant objects to this Interrogatory to

the extent that it is neither relevant to the asserted claims or

defenses, nor likely to lead to the discovery of admissible

evidence in connection therewith.  The Defendant objects to

this Interrogatory as improper as it is repetitive of other

Interrogatories and requests for production of documents and

things already made.

---

[8] On January 31, 2013, Ace Evert requested ATLeisure's consent to make a joint request to extend fact discovery.  See, Hayes Decl., Exh. D.  ATLeisure rejected this request, thus necessitating Ace Evert's filing a unilateral motion seeking an extension of fact discovery.  The Court granted Ace Evert's motion on February 22, 2013.

Interrogatory 15 is subsumed by interrogatory 14 and the response thereto and responses thereto:

**INTERROGATORY 14**:   Identify all customers who have made direct purchases of the Accused Product by purchaser, amount of product purchased and dates of purchase.

**RESPONSE:** The Defendant objects to this Interrogatory as improper as it is repetitive of other Interrogatories and requests for production of documents and things already made. However and without waiving any of the foregoing objections, the Defendant can state that, at this time, that the accused device is made exclusively for and sold to Bed, Bath and Beyond.  Sales of accused item number 8580 to Bed, Bath and Beyond were:   2008-09 customer season; 15,632 pieces for $645, 288.96; 2009-2010 customer season; none; 2010-2011 customer season, 11,220 pieces for $503,217.00; 2011-2012 customer season, 22,752 pieces for $1,172,183.04; 2012-2013 customer season, 14,070 pieces for $746,694.90.  The dates of sale are reflected in the produced documents.

Thus, Ace Evert has provided Plaintiff with the sales figures in terms of numbers and dollar value for the accused product, a product made

14

exclusively for Bed, Bath and Beyond.  Ace Evert also provided Plaintiff with Ningbo Everluck's commercial invoices, shipping documents, and Bed Bath and Beyond's purchase orders.  In addition, on January 22, 2013, Ace Evert provided a supplemental response to Plaintiff's RFP No. 64 by supplying copies of its agreements with third-party sales representatives.

## VII.   DEFENDANT RESPONDED TO INTERROGATORY 16, AS IT WAS DUPLICATIVE OF INTERROGATORY 14.

**INTERROGATORY 16**:   Provide the total number of Accused Products sold by model of product, the gross revenue received from the sales and the net revenue recognized from the sales.

**RESPONSE:** The Defendant objects to this Interrogatory as improper as it is repetitive of other Interrogatories and requests for production of documents and things already made.  See response to interrogatory number 16.

In its response to interrogatory 16, Ace Evert inadvertently referred Plaintiff to its response to Interrogatory 16.  The reference should have been to interrogatory 14 as follows:

**INTERRROGATORY 14:**  Identify all customers who have made direct purchases of the Accused Product by purchaser, amount of product purchased and dates of purchase.

**RESPONSE:** The Defendant objects to this Interrogatory as improper as it is repetitive of other Interrogatories and requests for production of documents and things already made. However and without waiving any of the foregoing objections, the Defendant can state that, at this time, that the accused device is made exclusively for and sold to Bed, Bath and Beyond. Sales of accused item number 8580 to Bed, Bath and Beyond were: 2008-09 customer season; 15,632 pieces for $645, 288.96; 2009-2010 customer season; none; 2010-2011 customer season, 11,220 pieces for $503,217.00; 2011-2012 customer season, 22,752 pieces for $1,172,183.04; 2012-2013 customer season, 14,070 pieces for $746,694.90. The dates of sale are reflected in the produced documents.

## VIII. ACE EVERT APPROPRIATELY OBJECTED TO INTERROGATORY 17.

In Interrogatory 17, Plaintiff asked and Ace Evert responded:

**INTERROGATORY 17:** Identify all customers you have solicited to make sales of the Accused Products.

**RESPONSE:** The Defendant objects to this Interrogatory to the extent that it is neither relevant to the asserted claims or

defenses, nor likely to lead to the discovery of admissible evidence in connection therewith.

In its response to Interrogatory 14, Ace Evert had advised Plaintiff that it had made the accused product exclusively for Bed, Bath and Beyond. Whether or not Ace Evert had <u>unsuccessfully</u> attempted to sell the accused product to others has no bearing on the quantum of damages Plaintiff might have allegedly sustained, or any bearing on the scope of any injunction that the patentee seeks.   Accordingly, in view of Ace Evert's response to Interrogatory number 14, Interrogatory 17 is not likely to lead to the discovery of admissible evidence.

## IX.   <u>PLAINTIFF'S DEMAND FOR SUPPLEMENTAL RESPONSES TO NOTICES TO PRODUCE DOCUMENTS SHOULD BE DENIED.</u>

Ace Evert produced 270 pages of documents on January 10, 2013 and supplemented that response with an additional 19 pages on January 22, 2013.[9]   Ace Evert identified which documents were responsive to which demands.  <u>See</u>, Hayes Decl. E.  Ace Evert identified documents responsive to demands 2, 3, 7, 8, 12, 13, 15, 17, 21, 24, 26, 27, 41, 42, 46, 51 56, 64, 66, and 67.  With respect to RFP No. 11, Ace Evert responded that no such

---

[9] Plaintiff's assertion that Ace Evert's document production was somehow untimely is ironic in view of the fact that Plaintiff had made late productions on each of February 1, 2013 and February 15, 2013.  <u>See</u>, Hayes Decl. Exh. G.  Ace Evert does not trouble a busy court with immateriality.

documents exist.  With respect to RFP No. 6, regarding document retention policies, Mr. Zhao testified Ace Evert does not have one.  And, as discussed in Point III and demonstrated in the annexed chart, Plaintiff's second notice to produce documents was largely duplicative, often verbatim, of its first.

In RFP No. 1, Plaintiff requested production of the documents which were used in responding to Plaintiff's first set of interrogatories.  Ace Evert's response indicates that those documents were produced.

In view of the foregoing, Ace Evert respectfully submits that Plaintiff's assertion that it did not provide any documents in response to Requests 1, 6, and 13 is not accurate.  In addition, as reflected in the documents produced and Mr. Zhao's testimony, Ningbo Everluck (and not Ace Evert) had sold the accused product to the sole customer for the accused product.  Therefore, it should be clear to Plaintiff that defendant Ace Evert does not and cannot have any documents to produce with respect to demands 72, 73, 74, 77 and 94 quoted in Plaintiff's brief.  Nevertheless, in responding to RFP Nos. 41 and 42, Ace Evert provided the commercial invoices, shipping documents, purchase orders and letter of credit draws exchanged between Ningbo Everluck and Bed, Bath and Beyond.  Therefore, to the extent documents reflecting the information requested in RPF's Nos. 72, 73, 74, 77 and 94 were obtained from Ningbo Everluck, they were produced.

Accordingly, Plaintiff's demand for supplemental responses to production requests should be denied with respect to Nos. 1, 6, 11, 13, 72, 73, 74, 77 and 94, because these items have been provided or clearly do not exist.  With respect to RFP No. 58, Ace Evert agrees that in the event it designates an employee to testify as an expert at trial or an employee provides declarations with respect to the products or patents at issue in this case, Plaintiff would be entitled to such expert disclosure as is required by the court rules.  At this stage of the case, however, such disclosure is not yet required.

With respect to Plaintiff's demand for supplemental responses RFP Nos. 10, 20, 43, 44, 45, 71, 90, and 91, Ace Evert stands by the objections raised in its responses.   Ace Evert again emphasizes, for the reasons explained in Point I above, that demands Nos. 43, 44 are improper, because they exceed the scope of Plaintiff's infringement contentions.

## X.   ACE EVERT PROVIDED PLAINTIFF WITH PRIVILEGE LOGS THAT SUFFICIENTLY DESCRIBE THE DOCUMENTS THAT WERE WITHHELD ON THE BASIS OF PRIVILEGE.

Ace Evert provided Plaintiff with the privilege logs annexed as Exhibit F to the Hayes Declaration.  As Plaintiff's counsel points out at page 21 of his brief, the undersigned responded to Plaintiff's good faith letter by advising that Ace Evert's counsel was not in possession of further

responsive documents, other than those listed on the privilege log.  That is, all documents that were believed to be responsive had either been produced or, if withheld on the basis of privilege, had been listed on the logs.

The privilege logs identify a limited number of documents.  The logs generally describe the subject matter of the documents.  As reflected on the logs, most of the listed documents were related to attorney analysis of Plaintiff's claims and patents, and discussions regarding the legal advice provided or legal advice to be sought.  The privilege logs sufficiently describe the documents so as to identify them and to allow Plaintiff to understand the nature of the documents and to articulate challenges. Obviously, Plaintiff is not entitled to a privilege log that is so detailed as to allow Plaintiff to surmise the content of the communications.

## XI.   DEFENDANT DID NOT WAIVE ITS OBJECTIONS TO PLAINTIFF'S NINTY-FOUR REQUESTS FOR PRODUCTION AND INTERROGATORIES.

The cases cited by Plaintiff do not stand for the proposition that meritorious objections to discovery demands are waived whenever responses to extensive demands are provided a few days late, particularly where, as here, opposing counsel was aware that responses would be forthcoming shortly and was aware that responding necessitated obtaining documents

from Ningbo Everluck in China.[10]  For example, in the case of *Red Bull GMBH v. Kassir Importexport Co*. cited by ATLeisure, plaintiff Red Bull's discovery responses were provided two months late.  *Red Bull GMBH v. Kassir Importexport Co.,* 2008 WL 6875113 (N.D.Ga. March 31, 2008).  In *Linnebur v. United Telephone Association* cited by ATLeisure, the defendant's discovery responses were 35 days late and, subsequently, were the subject of two motions to compel responses.  *Linnebur v. United Telephone Association,* 2012 WL 1183073 (D. Kan. April 9, 2012).  In *United Steelworkers of Am., AFL-CIO-CLC v. Ivaco, Inc.,* cited by ATLeisure, the plaintiff served its responses thirty-eight days late and without raising any objections whatsoever. *United Steelworkers of Am., AFL-CIO-CLC v. Ivaco, Inc.,* Civ. No. 1:01-CIV-0426-CAP, 2003 U.S.Dist.LEXIS 10008 (N.D. Ga. Jan. 13, 2003).  Only well thereafter did the plaintiff raise the attorney-work product privilege.  Nevertheless, the court held that the privilege was not waived, because there was no showing of unjustifiable delay, inexcusable conduct, or bad faith in responding to the discovery requests and, hence, the court declined to impose the extreme sanction of waiver of the privilege.  Id.

---

[10] Of course, to the extent the Court overrules Ace Evert's objections, the issue of waiver would be rendered moot.

Here, as in *United Steelworkers of Am., AFL-CIO-CLC,* Ace Evert responded in good faith to Plaintiff's discovery demands and provided a log with respect to those items it asserts are privileged.  Therefore, as in the case of *United Steelworkers of Am., AFL-CIO-CLC,* the extreme sanction of waiver of privilege should not be applied.

With respect to those demands relating to products other than the accused products, for the reasons explained in Point 2 above they were improper under the Local Patent Rules 4.1 and 4.4 and specifically because they exceeded the scope of Plaintiff's infringement contentions.  The demands precluded by LRP 3.1 were similarly improper.  Therefore, just as interrogatories in excess of the twenty-five permitted by Fed.R.Civ. 33 are void and therefore, no response is required, interrogatories 1-3 were likewise void.  Similarly, RFP Nos. 43 and 44 were void to the extent they seek documents concerning products other than the accused products.

## XII. <u>ACE EVERT'S DISCOVERY RESPONSES WERE PROPERLY CERTIFIED.</u>

Plaintiff states at page three of its brief that supposedly Ace Evert's interrogatory responses were improper as to form, because counsel did not sign them with respect to objections.  However, the responses were served by counsel, thereby dispelling any doubt as to the authorship of the

objections.   Ace Evert respectfully asks that the Court reject Plaintiff's hyper-technical objection.

### XIII.   PLAINTIFF'S REQUESTS FOR COST AND COUNSEL FEES SHOULD BE DENIED.

Ace Evert respectfully submits that Plaintiff's motion for costs and counsel fees should be denied because:  (i) as shown in points two and four above, several of Plaintiff's interrogatories, requests for production and inquiries during the deposition of Ace Evert's designee were improper under Local Patent Rules 4.1 and 4.4, because they exceeded the scope of Plaintiff's infringement contentions or were subsumed by Local Patent Rule 3.1; (ii) the limited knowledge of Ace Evert's designee with respect to its affirmative defenses and counterclaims reflected the fact that discovery from non-parties likely to have relevant information was on-going rather than any lack of preparation; (iii) Plaintiff's refusal to consent to extension of fact discovery and adjournment of the deposition of an Ace Evert designee; (iv) privilege logs were provided; and (v) Plaintiff's second notice to produce documents was largely duplicative of its first notice to produce and, as such, served little purpose of than to harass Defendant and to contribute to the short delay in providing discovery responses.  In view of all of these factors, Ace Evert's opposition to Plaintiff's first motion to compel discovery was substantially justified and wherefore an award of expenses would be unjust.

## XIV.  **CONCLUSION**

For the foregoing reasons, Plaintiff's written discovery demands (Interrogatories 1-3, RFP Nos. 43-45) and numerous deposition questions were improper, because they sought information with respect to products Plaintiff did not identify in its mandatory Infringement Contentions. Therefore, these items of discovery were precluded by the Local Patent Rules, and in addition were not reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, Plaintiff's motion to compel supplemental responses to these demands and to re-open the deposition of Ace Evert's Rule 30(b)(6) designee should be denied.

In addition, the deposition of Ace Evert's Rule 30(b)(6) designee should not be re-opened because Categories 8, 9 and 10 of Plaintiff's Rule 30(b)(6) notice were precluded by LRP 3.1, and accordingly Ace Evert's objections to questions falling into these categories were proper.  Moreover, Mr. Zhao's limited knowledge with respect to the factual basis of Ace Evert's affirmative defenses and counterclaims reflected the fact that discovery was still being sought from the non-parties likely to have relevant knowledge.  Therefore, the Rule 30(b)(6) deposition should not be re-opened as to these topics as well.

For the reasons explained above, Ace Evert satisfactorily responded to Interrogatories 15 and 16.  Interrogatory 17 (requesting information with respect to unsuccessful attempts to sell the accused product) seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, because Ace Evert disclosed in response to interrogatory 14 that the accused product was made exclusively for a single customer.

Plaintiff's demand for supplemental responses to production requests should be denied with respect to Nos. 1, 6, 11, 13, 72, 73, 74, 77 and 94, because these items have been provided or do not exist.  Similarly, Plaintiff's demand for a more detailed privilege log should be denied because Ace Evert has provided an adequate log.

Plaintiff's motion to compel supplemental responses to RFP Nos.  5, 10, 43, 44, 45, 71, 90 and 91 should be denied because, in view of the nature of Plaintiff's claims, Ace Evert's objections were well-founded.  Moreover, and finally, Ace Evert did not waive its objections to Plaintiff's discovery demands.

Dated: February 26, 2013

\_\_/s/ RM Ward_____

Heng Wang
Christian Oehm
Kenneth Hayes
**Wang, Gao & Associates, P.C**
Metuchen, NJ 08840
Telephone: (732) 767-3020
Facsimile: (732) 343-6880
E-mail:
heng.wang@wanggaolaw.com
E-mail:
c.oehm@wanggaolaw.com
E-mail
Ken.hayes@wanggaolaw.com
*Attorneys for Defendant*

and

Robert M. Ward (Georgia Bar
No. 775401)
**Dilworth IP, LLC**
3445 Stratford Road NE
Suite 2605
Atlanta, GA 30326
Phone 404-606-6862
Telephone: (404) 606-6480
Facsimile: (203) 220-8497
E-mail: rward@dilworthip.com
Attorney for Defendant

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this paper has been prepared in Times New Roman Font Point-14 in compliance with the N.D. Ga. L.R. 5.1.

## **CERTIFICATE OF SERVICE**

I hereby certify that the forgoing paper was electronically filed with the Clerk of Court by using the CM/ECF system, and which will be served upon all counsel of record.

By:   /s/ *Robert Ward*
Robert M. Ward

*Attorney for Defendant*