UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ATLEISURE, INC.,

       Plaintiff,

    v.

ACE EVERT INC.,

       Defendant.

CIVIL ACTION NO.

1:12-CV-1260-CAP

# O R D E R

This matter is before the court on the plaintiff's motion for a preliminary injunction [Doc. No. 36].

## I.    Background

### A.    Relevant Procedural History

On April 12, 2012, plaintiff ATLeisure Inc. (ATLeisure) filed this infringement action claiming that patio and outdoor umbrella products manufactured and sold by defendant Ace Evert, Inc. (Ace) infringe various claims of three patents [Doc. No. 1].[1] Ace answered denying infringement, and it counterclaimed for a declaratory judgment of non-infringement and invalidity [Doc. Nos. 12, 23].

---

[1] ATLeisure originally asserted claims under another patent. It dismissed that claim and amended its complaint to assert the three patents described below on June 22, 2012 [Doc. Nos. 19, 20].

Shortly after the parties filed their initial claim construction briefs, ATLeisure filed the present motion for preliminary injunction on November 13, 2012 [Doc. No. 36]. The evidence ATLeisure chose to include with its motion comprised declarations by two employees—Jason Bliss, a Vice President over sales, marketing, and operations; and Ross Boone, a senior product designer—and a report by the U.S. Trade Representative to Congress on China's compliance with its commitments to the World Trade Organization. On November 30, Ace timely responded in opposition to the motion.[2] The evidence in support of Ace's opposition and purporting to rebut ATLeisure's evidence included a declaration by Zhaojun Wang, Vice President of Evertrust Group (the parent company of Ace) and "Director of Sales" for Ace. ATLeisure filed its reply brief on December 17, 2012 [Doc. No. 48 ¶ 1].

One of the primary disputes in the motion and opposition revolved around the court's interpretation of the disputed claim terms. ATLeisure noted its belief that the claim construction proceedings had limited the issues in dispute and put the case in a better posture for injunction proceedings, *see* Mot. for Prelim. Inj. 1 [Doc. No. 36]. On May 20, 2013, the court issued its claim construction order, essentially adopting the positions taken by

---

[2] *See* Nov. 30, 2012 Order [Doc. No. 42] (clarifying the date for response).

ATLeisure regarding the disputed terms [Doc. No. 85]. With the question of interpretation of those terms resolved, the court held a hearing on the preliminary injunction motion on May 22, 2013. At the hearing, ATLeisure presented two witnesses—Jason Bliss and William (Bill) Browne, the President of ATLeisure—and introduced evidence to show sales lost to infringing competitors. Ace failed to present any evidence at the hearing,[3] but the court allowed the record to remain open for five days after the hearing to give Ace a last chance to present rebuttal evidence. On May 28, Ace filed a supplemental response in opposition to the motion for preliminary injunction based on the arguments and evidence presented at the hearing [Doc. No. 89], and it attached as evidence (1) a second declaration by Zhaojun Wang, (2) a

---

[3] Ace's counsel made two surprising statements as to the lack of a witness at the hearing. First, Ace objected to the plaintiff's presentation of evidence, complaining, "This is not an evidentiary hearing, unless we are provided with the same opportunity to provide our own witnesses." Hr'g Tr. 16 l. 8–13 [Doc. No. 90]. The court overruled that objection. *See* Fed. R. Civ. P. 65; *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (2d ed. 1995) (discussing the majority of courts' preference for oral testimony where facts are in dispute). Second, Ace complained that its counsel only "got the word on Monday in the afternoon" that the hearing had been scheduled for Wednesday, so Ace did not "have the opportunity present witnesses from China within that short notice." Hr'g Tr. 60 l. 1–4 [Doc. No. 90]. However, the court provided notice of the hearing three days earlier, on Friday, May 17, 2013, at 10:27 AM EDT, as shown on the filing receipt in CM/ECF.

portion of the deposition transcript of Hang Zhao, a representative of Ace,[4] (3) a number of documents showing the accused products were shipped from China to the United States "FOB" a location in China, and (4) two complaints and stipulations of dismissal in other cases involving some of the same patents.

The factual record for the motion for preliminary injunction is now closed, and the court makes the following findings based on the evidence presented so far.

**B.     Factual Findings**

ATLeisure was formed in 2011 to manufacture and sell outdoor umbrellas. It acquired several patents when it purchased the umbrella assets of Southern Sales and Marketing Group in 2011.[5] The patents cover technology used in offset (side supported) umbrellas commonly used on patios and at pools. ATLeisure asks the court to grant a preliminary injunction

---

[4] Nothing within the documents attached to Ace's supplemental response indicates what role Zhao plays for Ace.

[5] Southern Sales and Marketing Group had sold its umbrellas under the name "Southern Casual Living." *See* Ex. E, F to Def.'s Resp. in O'ppn [Doc. Nos. 43-5, 43-6].

based on Ace's infringement of two patents, U.S. Patent No. 7,604,015 (the ′015 patent) and U.S. Patent No. 8,104,492 (the ′492 patent).[6]

The ′015 patent, titled "Umbrella Having Structural Rib Configured to Receive Electrical Components and Associated Wiring," was duly issued on October 20, 2009. It teaches a convenient way to house lights and wiring within a patio umbrella. It describes, generally speaking: (1) a support member with channels suitable for carrying electric wire; (2) ribs containing channels leading to openings suitable for lighting; and (3) a means to connect to a conventional, battery or solar power source.

The ′492 patent, titled "Adjustable Offset Umbrella," was issued on January 31, 2012. It discloses an easy way to raise and lower the umbrella canopy and adjust its angle, by way of a sliding member (a "collar"), that incorporates a pulley system, and can be locked into position at various places on the vertical pole of the umbrella (the "mast") using various means.

ATLeisure's patented technology, and its previous affiliation with Southern Sales and Marketing Group, allowed it to quickly gain a substantial share of the market for sale of offset umbrellas to large retailers. ATLeisure's target customers include what it calls "large retailers," such as Home Depot,

---

[6] The amended complaint also alleges infringement of U.S. Patent No. 5,937,882, but ATLeisure did not raise that infringement as a basis for the preliminary injunction.

Lowe's, Bed Bath & Beyond (BB&B), Wal-Mart, Kroger, Target, Sears, Menards, CVS, "and others." Bliss Decl. ¶ 4 [Doc. No. 36-2]. Of these targets, ATLeisure has been able to "successfully market" its products to Wal-Mart, Kroger, QVC, ACE, Sears, Menards, CVS, and Lowe's. *Id.* ¶ 12. The gross sales for 2012 totaled approximately $12 million, and 80% of the umbrellas it sold used technology covered by the patents at issue. *Id.*

However, Bliss stated in his declaration that ATLeisure had "lost much of this business for 2013 to competitors utilizing its patented technology, including sales it made the year before to Lowe[']s and Wal-Mart." *Id.* ¶ 13. The declaration did not say exactly to *which* competitors it has lost its business, because the large retailers have not provided that data about their purchases. But gleaning what it could from the retailers' websites, ATLeisure believed the large retailers "made purchases of offset umbrellas utilizing [its] patented technology . . . from *other sellers, such as* Ace Evert." *Id.* (emphasis added). Bliss's declaration filed with the motion for preliminary injunction did not identify any of the other sellers in the market besides Ace, and it did not indicate whether Ace has made sales to any specific retailer (including Lowe's and Wal-Mart, whom ATLeisure specifically identified as customers where it lost sales).

Bliss's declaration identified one infringing product sold by Ace, the "Solar Lighted Rectangular Cantilever Umbrella with Umbrella Base and Cover" (the Ace Umbrella). *Id.* ¶ 14.[7] Bliss declared that the Ace Umbrella is marketed to the same large retailers as ATLeisure's umbrellas. However, Ace presented some evidence to rebut that conclusion. Ace's "Director of Sales," Mr. Wang, declared that Ace exclusively manufactures and sells the Ace Umbrella to BB&B, and *not* to "any other wholesalers" in the United States. Wang Decl. ¶¶ 1, 3 [Doc. No. 43-1].[8] Moreover, Ace's relationship with and sales to BB&B predate the formation of ATLeisure in 2011. *Id.*

---

[7] Through the filing of the motion for preliminary injunction, ATLeisure had identified the same accused device sold by Ace as infringing its patents. *See* Compl. ¶ 1 [Doc. No. 1]; Pl.'s Infringement Contentions 2 [Doc. No. 24]; Pl.'s Supplemental Disclosure of Infringement Contentions 2 [Doc. No. 30]. In March 2013, ATLeisure supplemented its infringement contentions again to include two additional products in the "Mainstays" line of offset umbrellas. Pl.'s Second Supplemental Infringement Contentions 2–3 [Doc. No. 75]. Neither of these new accused devices form a basis for granting the motion for preliminary injunction filed four months before.

[8] In his post-hearing declaration submitted to rebut the plaintiff's live testimony, Wang reversed himself and stated, "Ace Evert has always been engaged **only** in post-sale customer services concerning [the accused device] and **never** in the manufacture, sale, offer for sale . . . or importation into the United States." Second Wang Decl. ¶ 2 [Doc. No. 89-1] (double emphasis in original). The directly conflicting statements were submitted as truthful under penalty of perjury, but the only explanation Ace's counsel has offered to explain the inconsistency was that Wang is "not a lawyer." *See* Hr'g Tr. 71 ll. 3–24. Accordingly, the court finds the first and less advantageous admission, that Ace does sell the accused device to Bed Bath & Beyond, to be the more credible statement.

At the hearing on the motion, Bliss and Browne expanded on the previous declarations as to what potential infringers were harming their business. ATLeisure introduced evidence showing a drastic reduction in offset umbrella sales between 2012 and 2013. In particular, ATLeisure's two largest customers for offset umbrellas, Lowe's and Wal-Mart, stopped their purchases from ATLeisure altogether in 2013. *See* Hr'g Tr. 32 ll. 1–13. ATLeisure was able to identify Ningbo Everluck, Ace's parent company, as the manufacturer of the competing offset umbrellas now sold in Wal-Mart stores;[9] ATLeisure identified the umbrellas sold by Lowe's as originating from another competitor in the offset umbrella business, either Yotrio or

---

Moreover, while Mr. Wang may not be a lawyer, his counsel, Robert M. Ward is. Over a year ago, Mr. Ward signed and filed Ace's answer to the original complaint, where Ace ***admitted*** that it imports, markets, and sells "patio and outdoor umbrellas," including selling the original accused device to BB&B. *See* Answer to Compl. ¶¶ 14–16 [Doc. No. 10] (admitting, for example, "Defendant admits that it is in the business of distributing, selling, marketing, and importing patio and outdoor umbrellas . . . ."). In July 2012, Mr. Ward signed Ace's answer to the amended complaint containing the same admissions. *See* Answer to Am. Compl. ¶¶ 14–16 [Doc. No. 23]. Subsequently, and without moving for leave to amend Ace's answer to retract these admissions, Mr. Ward made oral and written argument directly contradicting the answer. Mr. Ward also filed the contradictory second Wang declaration. At a later time, the court will address whether these contradictory representations by Ace's lawyer violate Fed. R. Civ. P. 11.

[9] Additionally, the bottom of the label on the "Mainstays" branded umbrellas in Wal-Mart has the word "EVERT" in blue on one side. *See* Pl.'s Ex. 2 [Doc. No. 93-2].

Activa.[10] Although the court finds this testimony credible, it does not establish that defendant Ace made any of these sales. The court therefore finds, for the purpose of addressing the present motion, that Ace sells the accused umbrella only to BB&B, and not to any of the other large retailers ATLeisure believes to be purchasing infringing devices.

Additionally, Bliss stated in his declaration that Ace's infringement of ATLeisure's patents will have an "incredibly significant, if not fatal" effect on ATLeisure's business, including "destroy[ing] the market share that ATLeisure has obtained . . . [and] much, if not all of its offset umbrella business." Bliss Decl. ¶ 17 [Doc. No. 36-2]. In Bliss's opinion, Ace's infringement is likely to drive ATLeisure out of business. The reason ATLeisure cannot compete is that it cannot match infringers' lower prices in a price-sensitive market, due to its investment in the patented technology. *See id.* ¶¶ 10–11. In order to avoid or forestall this outcome, ATLeisure "is attempting to diversify" its business to include sales of "other products" for the 2013 season. *Id.* ¶ 13. At the hearing, the testimony and actual sales figures for 2012 and 2013 showed that the Lowe's business was lost to a

---

[10] All told, ATLeisure identified a total of four potentially infringing competitors in the market for offset umbrellas: defendant Ace (or its parent Ningbo Evertrust), Yotrio, Red Star, and Activa. *See* Hr'g Tr. 30 ll. 2–3, 32 ll. 18–25, 34 ll. 19–23, 56 ll. 13–16 (identifying various competitors' products in Lowe's, Wal-Mart, and the market in general).

potentially infringing competitor that is not a party to this lawsuit, and the Wal-Mart business was lost to Ningbo Everluck.

## II.   Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Additionally, because a preliminary injunction enjoining patent infringement under 35 U.S.C. § 283 involves "substantive matters unique to patent law," Federal Circuit law provides the applicable standard to judge whether the court should grant the injunction. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (quoting *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988)). Thus, the court asks whether the plaintiff's success on the merits is "more likely than not," and the weight of that likelihood may be considered as an equitable factor when balancing the equities. *Id.* at 526.

## III.   Analysis

### A.   Likelihood of Success on the Merits

In order to demonstrate a likelihood of success, ATLeisure must demonstrate "in light of the presumptions and burdens that will inhere at

trial on the merits," that it will likely prove Ace's product infringes and that it will withstand Ace's challenges to the validity and enforceability of the two patents at issue in this motion. *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006).

As an initial matter, the court rejects Ace's contention that there cannot be any infringing conduct within the United States under 35 U.S.C. § 271(a) because the shipments were "FOB China." *See* Hr'g Tr. 41–44; Post Hr'g Resp. in O'ppn 2–4 [Doc. No. 89]. The court notes that Ace cites *no* authority to support its contention; rather, Ace's counsel appears to rely on argument by repeated assertion. Of course, there may be good reason Ace cited no authority, since the Federal Circuit has already "rejected the notion that simply because goods were shipped f.o.b., the location of the 'sale' for the purposes of § 271 must be the location from which the goods were shipped." *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) (quoting *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1370 (Fed. Cir. 2008)) (holding the contractual "f.o.b." term was not dispositive, so the district court did not commit fundamental error by instructing the jury it could "could consider 'where the products were shipped from and where the products were shipped to' in determining if a sale occurred in the United States"), *aff'd sub nom. Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct.

2060, (2011). *See also Cequent Trailer Prods., Inc. v. Intradin (Shanghai)*
*Mach. Co.*, No. 1:05-CV-2566, 2007 WL 438140, at *5 (N.D. Ohio Feb. 7, 2007)
("[The] 'F.O.B. China' argument addresses only the risk of loss in commercial
transactions. It is clear that [the defendant] and its United States customers
intended that [the defendant] ship the accused infringing products to them in
this country. The F.O.B. freight terms merely went to when the risk of loss
shifted during transport. For patent-law purposes, the risk of loss underlying
a sales contract has little or no bearing on the situs of an allegedly infringing
sale or offer to sell." (citing *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
35 F.3d 1576, 1579 (Fed. Cir. 1994)). Here, according to the factual findings
in this order, Ace sells the accused device to U.S. BB&B stores for
consumption by U.S. consumers, and whether the items were shipped FOB
China makes no difference.

> 1. *Validity*

Ace raised defenses (and counterclaims) of invalidity of both patents in
its Answer, but on a motion for preliminary injunction it must raise a
"substantial question" with regard to their validity or enforceability. *Id.* "The
ultimate question . . . is whether the challenger's evidence of invalidity is
sufficiently persuasive that it is likely to overcome the presumption of patent
validity." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed.

Cir. 1996) (holding the "limited record presented to the district court" on the issue of the patent's invalidity failed to raise a substantial question of invalidity); *see also Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347 (Fed. Cir. 2011) ("Patents are presumed to be valid and overcoming this presumption requires clear and convincing evidence.").

Ace has not raised a substantial question of validity of the patents at issue. In fact, Ace spends only two sentences (including one footnote) addressing the issue in its brief in opposition to the motion. In concluding the section of the brief on likelihood of success, Ace states, in conclusory fashion, "And moreover, the ′492 patent *appears to be invalid* over the prior art." Def.'s Br. in O'ppn 13 [Doc. No. 43] (emphasis added). Then, in a footnote to this sentence, Ace states that the ′492 "structure *appears to be <u>identical</u>* in all material respects" to a design patent owned by another competitor. *Id.* at 13 n.3 (italic emphasis added). It is the defendant's job to present evidence that is "sufficiently persuasive" to overcome the presumption of validity, *PPG Indus.*, 75 F.3d at 1566. Ace's statement of what "appears to be" the case neither persuades nor carries its burden to show the patent is invalid. Therefore, the only question is whether ATLeisure has shown Ace's product likely infringes the (presumptively) valid patents.

2.    *Infringement*

Infringement exists when a device that is literally covered by the claims or is equivalent to the claimed subject matter is made, used, or sold, without the authorization of the patent holder. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476 (Fed. Cir. 1998). "Infringement requires that every limitation of a claim be met in the accused structure either exactly or by an equivalent." *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1125 (Fed. Cir. 1996). The court provided its interpretation of the disputed terms of the ′015 and ′492 patents in the May 20 *Markman* Order [Doc. No. 85], so it will apply those interpretations here.

Claim 1 of the ′015 patent covers an umbrella/light structure with nine elements. In Ace's response to the plaintiff's infringement contentions, it acknowledged that seven of these nine elements are present in the Ace umbrella. *See* Ex. A to Def.'s Resp. to Infringement Contentions 5–6 [Doc. No. 28-1]. The only elements Ace contends are not present in the accused device are (1) a bulb that extends through two holes in the cavity of the umbrella structure; and (2) an electrical conductor that runs from the bulb, along a channel in the umbrella structure to an electrical source. Ace's primary contention as to the first missing element is based on its (now rejected) proposed construction of the "bulb" term. And even assuming the court's

construction, Ace then argues its device does not infringe because it does not have a "bulb extending from below said second hole, up through said cavity, to said first hole," as required by Claim 1. It contends: "(a) the LED extends only within the first hole; (b) the 'casing' hangs down below the rib, but extends only within the first hole; and (c) the 'wire' is the only item that extends to the second hole." Def.'s Resp. in O'ppn 11 [Doc. No. 43]. But Claim 1 requires the "bulb" to extend between and through the two holes, and, according to the court's interpretation of the term bulb, this includes the light, the casing, and an electrical conductor. Thus, Ace's argument effectively concedes its device contains an LED light with casing and a wire conductor—that is, a "bulb—which extends between the holes and through the second hole. *See also* Illustration C to Mot. For Prelim. Inj. [Doc. No. 36-1, at 25]. Therefore, the Ace umbrella would contain every limitation of the '015 patent, and ATLeisure is likely to prevail on its infringement claim.

As to the '492 patent, Ace concedes every limitation except for one is present in the accused device. *See* Ex. A to Def.'s Resp. to Infringement Contentions 8–9 [Doc. No. 28-1]. However, Ace contends its umbrella does not contain the "locking means for releasably securing the sliding member to the main pole at a selected location along the main pole." As discussed in the court's claim construction order, the "locking means" is given its ordinary

15

meaning consistent with 35 U.S.C. § 112 ¶ 6, governing means plus function elements. Seemingly overlooking ATLeisure's supplemental infringement contentions, where it conceded this term was a means plus function element, Ace's opposition brief continues to (incorrectly) assert that ATLeisure contends its claim does not contain a means plus function element. Ace's brief only argues non-infringement based on its proposed construction of locking means, which the court rejected, and does not address infringement under the interpretation ATLeisure argues in its brief or that the court adopted in its claim construction order. Rather, Ace merely states, "[T]here is no infringement of the ′492 patent claim." Therefore, because Ace failed to respond with argument or evidence as to non-infringement as asserted by ATLeisure, the court considers the point conceded. *See* LR 7.1(B), NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion."). Thus, ATLeisure is also likely to prevail on its infringement claim as to the ′492 patent.

### B.   Irreparable Harm

#### 1.   *There is No Presumption of Irreparable Harm*

ATLeisure must also meet its burden to show an irreparable injury if the injunction is not granted. Before the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), if a likelihood of success on

the merits had been established, then courts would apply a *presumption* of irreparable harm. *See, e.g.*, *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). In *eBay*, the Court held that the district and appellate courts had incorrectly applied "categorical" rules in granting a permanent injunction after patent infringement had been found. 547 U.S. at 393. Instead, the court should apply "the traditional four-factor framework that governs the award of injunctive relief." *Id.* at 394. The Court held, "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* For a while after *eBay*, the Federal Circuit declined to expressly address the presumption of irreparable harm. However, the Federal Circuit recently "put the question to rest and confirm[ed] that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011).

Although the plaintiff in *Bosch* was seeking a permanent injunction, the court made no distinction between the preliminary or permanent nature of the relief. In holding that the presumption of irreparable harm no longer applies, the court noted its agreement with "at least two of our sister circuits

that have reached the same conclusion as it relates to a similar presumption in copyright infringement matters." *Id.* at 1149 (citing *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011); *Salinger v. Colting*, 607 F.3d 68, 76 (2d Cir. 2010)).

Both of those "sister circuit" matters dealt with the propriety of a *preliminary* injunction in light of *eBay*. In *Perfect 10*, the Ninth Circuit concluded:

> Although *eBay* dealt with a permanent injunction, the rule enunciated in that case is equally applicable to preliminary injunctive relief. This conclusion is compelled by Supreme Court precedent, cited in *eBay*, holding that "the standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."

653 F.3d at 981 (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987)). The Sixth Circuit came to the same conclusion in the *Salinger* case, holding that "*eBay*, as reinforced by the Supreme Court's very recent decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), [does not] permit an easier grant of a preliminary than of a permanent injunction." 607 F.3d at 78.

This court holds that a presumption of irreparable harm in a preliminary injunction is inconsistent with the Supreme Court's holdings in *eBay* and *Winter*, and it is inconsistent with the Federal Circuit's holding in

*Bosch*. The Federal Circuit stated it was reaching the "same conclusion" as its "sister" circuit courts that had expressly rejected the presumption of irreparable harm for copyright preliminary injunctions. Contrary to the plaintiff's contention that it "enjoys a rebuttable presumption of irreparable harm," Pl.'s Mot. for Prelim. Inj. 16 [Doc. No. 36-1], such a presumption no longer exists. *See also Tiber Labs., LLC v. Hawthorn Pharm., Inc.*, 527 F. Supp. 2d 1373, 1380 (N.D. Ga. 2007) ("This Court agrees that *eBay* does not leave room for a presumption of irreparable injury in patent cases, whether raised at the preliminary or permanent injunction phase."). Accordingly, the court will not presume harm even though there is likelihood of success on the merits; the burden to prove irreparable injury rests entirely with ATLeisure. *Id.*

> ### 2.   *Insufficient Evidence of Irreparable Harm*

The court now turns to the ATLeisure's evidence and argument that the harm from Ace's infringement is irreparable. Although the Federal Circuit and this court have held *eBay* "jettisoned" the presumption of irreparable harm no matter the timing of the injunction sought, the Federal Circuit also cautioned, "While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Bosch*, 659 F.3d at 1149 (noting the "fundamental nature of patents as property rights granting the

owner the right to exclude"). Specifically, the court concluded the district court had abused its discretion by ignoring the Federal Circuit's earlier precedent establishing "standards that inform the four-factor inquiry and, in particular, the question of irreparable harm." *Id.* at 1150.

Notably, ATLeisure's brief in support of the motion for preliminary injunction provides little (if any) discussion of these standards.[11] Instead, it lists six nonexclusive factors it contends "[c]ourts have identified," but the citation it provides to *Bosch* does not support each of those factors. ATLeisure also (indirectly) cites to Chief Justice Roberts's concurrence in *eBay*, where he wrote that the long tradition of equity practice often granted injunctive relief on a finding of likely patent infringement was "not surprising, given the difficulty of protecting a right to exclude through monetary remedies that allow an infringer to use an invention against the patentee's wishes." *eBay*, 547 U.S. at 395.

In citing these factors, ATLeisure presents four main arguments why its harm here is irreparable. First, it contends that "in-and-of-itself," the "existence of a likely infringer" demonstrates irreparable harm because it will be difficult to exclude others from the market and monetary remedies are

---

[11] Additionally, ATLeisure's reply brief cites no legal authority in support of its argument that the facts here establish irreparable injury.

often not enough in the circumstances of a patent violation. The court holds this circular and conclusory argument does not tip the scales much in the direction of irreparable harm. The "existence of a likely infringer" is essentially the same as saying there is a likelihood of success on the merits of a patent infringement claim, and the court has already held such a finding *cannot* give rise to a presumption of irreparable harm. It can be evidence of *some* harm. *See eBay*, 547 U.S. at 395 (Roberts, C.J., concurring). But that alone cannot meet the plaintiff's burden to show irreparable harm.

Second, ATLeisure contends Ace's infringement "threatens the existence of [ATLeisure's] business. Citing Bliss's declaration, it contends it is a new business with a significant investment in its patent portfolio, while Ace can merely copy the device and undercut ATLeisure's prices without needing to recoup the investment costs. Third, ATLeisure contends the relationships with its potential and existing customers will be affected because it no longer has the benefit of its "exclusive technology." Because ATLeisure is a newer company without longstanding relationships with customers, losing advantage of its patent monopoly will leave ATLeisure with "little or no ability to compete."

The court concludes the evidence on both the second and third prongs of ATLeisure's argument is insufficient to support a finding of irreparable

harm. The only *evidence* presented on the issue of harm that was included
with the original motion was the declaration by Bliss. His declaration
consists mostly of conclusory statements and allegations that are sometimes
not even directed specifically toward Ace. "Conclusory statements by an
officer of the moving party are of limited probative value. More than simple
recitation of the threat, [the plaintiff] must present specific 'credible and
admissible evidence that such damage threatens its businesses with
termination.'" *Dimare Fresh, Inc. v. Sun Pac. Mktg. Coop., Inc.*, No. 1:06-CV-
1265-AWI-SMS, 2006 WL 2686969, at *3 (E.D. Cal. Sept. 19, 2006) (citations
omitted). Moreover, courts are "wary of issuing an injunction based solely
upon allegations and conclusory affidavits submitted by [the] plaintiff." *Atari
Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed. Cir. 1990);
*see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure § 2949 (2d ed. 1995) ("Preliminary injunctions frequently are
denied if the affidavits are too vague or conclusory to demonstrate a clear
right to relief under Rule 65.").

 Here, as detailed in the factual findings, *see supra* Part I.B, Bliss's
declaration did not say ATLeisure has lost *any* of its business to Ace. Instead
he states ATLeisure has lost "much" business to "competitors" and other
sellers, "such as Ace Evert," without saying how much or what competitors.

Bliss declares that ATLeisure lost some of its sales to Wal-Mart and Lowe's, but Ace sells the accused device only to BB&B. Moreover, the evidence presented at the hearing on the motion showed that the lost Lowe's sales went to a non-party competitor, either Yotrio or Activa, and the lost Wal-Mart sales were made by Ningbo Everluck. While it is undisputed that Ningbo Everluck is the parent company of Ace, ATLeisure has not cited any authority to support the conclusion that the child, Ace, may be held responsible for the infringing conduct of the parent, Ningbo Everluck.[12]

Thus, ATLeisure's inability to pinpoint lost sales or market share due to *Ace*'s infringement is unsurprising, given the factual record before the court and Ace's previous relationship with BB&B. While BB&B may be a *target* customer of ATLeisure's, the evidence does not establish that it was an *actual* customer at any time. In fact, ATLeisure's sales figures presented at the hearing show BB&B was not an existing customer. Bliss's statement that ATLeisure will lose market share based only on Ace's potentially infringing sales to BB&B only amounts to speculation. *See* 11A Wright & Miller, *supra*, § 2949. So ATLeisure's harm is not attributed directly to Ace but to other

---

[12] ATLeisure's witnesses and counsel repeatedly asserted that Ningbo Everluck was the parent of Ace and appeared to treat them as one and the same. So, to be fair, the court points out that both parties are guilty of argument by repeated assertion.

"competitors" who may be infringing. *Cf. Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) (stating, in the context of examining whether infringement of a patented feature drives consumer demand and, consequently, lost sales, "[A] likelihood of irreparable harm cannot be shown if sales would be lost regardless of the infringing conduct."). Moreover, Bliss concedes that ATLeisure is "is attempting to diversify" its lines of business beyond umbrella sales, a statement that undercuts its claim of irreparable harm. Thus, ATLeisure's conclusory statements in its second and third bases to support its argument simply do not persuade the court that Ace's harm to ATLeisure is irreparable.

ATLesiure's fourth argument in favor of the irreparable harm factors is that if it is unable to prevent Ace from marketing infringing products, Ace's conduct will be "likely to encourage other infringement, particularly from emerging market companies." The evidence in support of this contention is a report by the U.S. Trade Representative to Congress, which discusses Chinese companies' violations of U.S. intellectual property rights and their effects on U.S. businesses. At the hearing, ATLeisure also pointed to what it believed was potentially infringing conduct by competitors Yotrio, Activa, and Red Star. Again, the court finds this argument unpersuasive on the irreparable harm factor.

Most importantly, by bringing this suit, ATLeisure has put potential infringers (even non-domestic ones) on notice that it intends to enforce its intellectual property rights. It has done so before by suing Red Star. *See ATLeisure, LLC v. Red Star Traders, LLC*, No. 1:12-CV-2253-TWT (N.D. Ga. filed June 28, 2012). Ultimately, the claims against Red Star for infringement of the ʹ492 patent were voluntarily dismissed with prejudice. Additionally, ATLeisure's predecessor Southern Sales and Marketing had asserted the ʹ015 patent against Yotrio, although that case was dismissed without prejudice for want of prosecution. *See S. Sales & Mktg. Grp., Inc. v. Yotrio Corp.*, No. 1:11-CV-1371-TCB (N.D. Ga. Mar. 23, 2012).[13] So, only one of the four potentially infringing competitors ATLeisure identified, Activa, has *not* been sued for infringement of one of the patents at issue here. The court does not agree that the denial of a preliminary injunction is "likely to encourage other

---

[13] Ace's counsel, Robert Ward, stated at the hearing that he represented Yotrio in the previous action, that Yotrio had a license to the patent, and that he would "make [the] settlement agreement available to the court" as proof of that assertion. *See* Hr'g Tr. 56–57 [Doc. No. 90]. Then, in the post-hearing brief, Ace argued the dismissals of the Red Star and Yotrio cases were "res judicata in this case," and neither Red Star nor Yotrio may be sued again "on these umbrellas." Post Hr'g Resp. in O'ppn 5 [Doc. No. 89]. However, the only evidence presented to support this claim is the dismissals themselves, which as discussed only show a single patent asserted in each action, and one action was dismissed without prejudice. Thus, the evidence presented does not show Red Star and Yotrio could not be sued again for any of the other patents asserted here.

infringement" where these previous litigations appear to have resolved
without the need for an injunction.

Viewing all these arguments and the evidence supporting them
together, the court concludes that ATLeisure has not carried its burden to
make a "'clear showing' that it is at risk of irreparable harm." *Apple*, 678 F.3d
at 1325 (quoting *Winter*, 555 U.S. at 22). There are two primary bases for this
conclusion. First, the conduct of other possible infringers who are not parties
to this action cannot be pinned on defendant Ace. The evidence showed at the
hearing showed ATLeisure lost much of its offset umbrella business (the
Lowe's sales) to either Yotrio or Activa, not Ace. The evidence only showed
Ace sells to one customer, BB&B, and that customer was never a customer of
ATLesiure. So Ace's likely infringement by its sales to BB&B has not
irreparably harmed ATLeisure's market for the offset umbrella business.

Second, ATLeisure has not persuaded the court—either by argument
with citation to authority or by the evidence presented—that the conduct of
Ace's parent, Ningbo Everluck, should be attributed to Ace. It is also not clear
what effect an injunction against Ace, preventing it from selling the accused
devices in the United States, would have to prevent Ningbo Everluck from
doing the same. The two entities are not one and the same, at least not on the
record before the court on this motion. Thus, although the evidence

established that Ningbo Everluck's Mainstays-branded offset umbrella to Wal-Mart may have caused ATLeisure's to lose that business, the court cannot conclude defendant *Ace*'s conduct played any role. Therefore, ATLeisure has not shown that Ace's infringement puts the it at risk of irreparable harm. This conclusion alone requires that the motion for preliminary injunction be denied, so the court does not address the other two factors. *See Winter*, 555 U.S. at 23–24.

## IV.   Conclusion

In this order, the court takes no position on either the ultimate merits of the plaintiff's case or whether the plaintiff may be able to demonstrate its right to injunctive relief on a more complete factual record. In particular, the court notes that ATLeisure has supplemented its infringement contentions to include additional accused devices, and the court will address the dispute over the plaintiff's ability to request discovery relating to additional accused devices in due course. Should ATLeisure move to amend its complaint and add the parent company as a defendant, some of the conclusions in this order could perhaps be different. However, based on the evidence presented with the motion for preliminary injunction, the court concludes the motion [Doc. No. 36] must be DENIED.

**SO ORDERED** this 6th day of June, 2013.

/s/Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge